UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AYKUT PILAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:25-CV-456-ZMB |
| ) | |
| UBER TECHNOLOGIES, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Uber Technologies's Motion to Compel Arbitration, Doc. 13, and self-represented Plaintiff Aykut Pilak's motions for leave to file various documents, Docs. 20, 23, 30. Because Pilak entered into binding arbitration agreements with Uber, the Court grants Uber's Motion to Compel Arbitration and denies the remaining motions as moot.

## **BACKGROUND**

### **I. Factual Background**

Pilak alleges that Uber discriminated against him based on his race, national origin, and limited English proficiency. Doc. 1 at 5. In particular, the Complaint alleges that Uber manipulated his "acceptance rate" and failed to fully compensate and reimburse him in an attempt to push him off the platform. *Id.* ¶¶ 3–4. Pilak also raises safety concerns, including that he was assaulted by a racially motivated passenger. *Id.* ¶¶ 1–2, 5. However, when Pilak signed up with Uber in 2022, he entered into four agreements, all of which contain arbitration provisions. *See* Doc. 14-1 ¶¶ 15–18.

### **II. Procedural Background**

Pilak filed his complaint in April 2025. Doc. 1. After initially moving to proceed in forma pauperis, Pilak paid the filing fee and served Uber. Docs. 2, 6, 9. Several weeks later, Uber filed a

motion to compel arbitration. Doc. 13. That motion is fully briefed, *see* Docs. 16, 22, and Pilak has filed three related motions seeking to expand his arguments.[1] Two are effectively motions for a sur-reply, with the first attempting to add legal arguments and the second addressing "mischaracterizations and disparaging allegations" in Uber's brief. *See* Docs. 20, 23. Most recently, Pilak filed a Motion for Leave to File Supplemental Factual Allegations under Rule 15(b). Doc. 30.

## LEGAL STANDARD

The Court's analysis is guided by the overarching presumption in favor of arbitration embodied in the Federal Arbitration Act (FAA). 9 U.S.C. § 2 ( "A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). The Eighth Circuit has recognized that "the FAA establishes a 'liberal federal policy favoring arbitration agreements.'" *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (citation omitted). Further, "[a] motion to compel arbitration must be granted if a valid arbitration clause exists which encompasses the dispute between the parties." *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156–57 (8th Cir. 2012) (quotation omitted). If the arbitration clause contains a "delegation" provision (deferring to the arbitrator questions of arbitrability or validity of the contract), then a court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales*, 586 U.S. 63, 68 (2019) (citation omitted). "[T]he party resisting arbitration bears the burden of showing [] that the arbitration provision is invalid . . . ." *H&T Fair Hills, Ltd. v. All. Pipeline L.P.,* 76 F.4th 1093, 1099 (8th Cir. 2023) (citations omitted).

---

[1] The Court notes that its conclusion would not change even if it were to consider Pilak's supplementary filings.

Relevant here, the "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are exempt from the FAA. 9 U.S.C. § 1. The Supreme Court recently held that a "class of workers" is defined by examining "the actual work that the members of the class, as a whole, typically carry out." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022). A class of workers is "engaged in foreign or interstate commerce" when they are "actively engaged in transportation of those goods across borders via the channels of foreign or interstate commerce." *Id.* at 458 (quotation omitted).[2]

## DISCUSSION

Pilak does not contest that he accepted contracts containing arbitration clauses or the fact these clauses cover the claims he brings here. Instead, he challenges the enforceability of these provisions in two ways. First, he raises a host of constitutional arguments, including that arbitration would violate his right to a jury trial, and he disputes the validity of the contracts given his English proficiency at the time he accepted them. Doc. 16-1 at 1–2, 5. Second, Pilak contends that he falls into the FAA's "transportation worker" exception, and accordingly, that the arbitration clause is invalid. *Id.* at 3–4. The Court addresses each of these arguments in turn.

**I.     Constitutional Claim and English Proficiency**

Pilak contends that the arbitration clauses violate the Seventh Amendment by taking away his right to a jury trial. *Id.* at 1–2. Further, he claims that, "[w]hen [he] started working for Uber, [his] English proficiency was insufficient" and that he had "no ability to translate and understand the contract in Turkish." *Id.* at 5. While not explicitly stated, he appears to raise both arguments as

---

[2] The Court believes that *Saxon* abrogates *Lenz*'s non-exhaustive eight-factor balancing test, as most of those factors appear to focus on the individual worker rather than the broader class. *See* 431 F.3d at 352. Further, the Court finds that test applies only for workers "one step removed from [transportation]"—in agreement with other courts that have examined the *Lenz* test. *See, e.g.*, *Osvatics v. Lyft*, 535 F. Supp. 3d 1, 20 (D.D.C. 2021); *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 482 n.3 (S.D.N.Y. 2008). But even if the Court were to analyze Pilak's claims under the *Lenz* test, it would find that Uber drivers do not qualify under the transportation-worker exception.

3

grounds for the invalidity of the underlying agreements. While the Court normally would address these claims before enforcing the agreement, the presence of a valid delegation provision in the contract, *see* Doc. 14-1 at 28, which Pilak has not challenged, means that these questions are reserved for an arbitrator. *Henry Schein, Inc.*, 586 U.S. at 68 (2019) ("[A] court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator even if it appears to the court to be frivolous.") (quotations omitted); *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) ("If not challenged directly, we presume the delegation provision is valid, and, as a result, antecedent questions such as an arbitration contract's validity will go to the arbitrator"). Accordingly, these issues cannot undermine Uber's request to compel arbitration.

## II.   FAA Transportation-Worker Exception

Pilak's remaining argument is that he falls into the FAA's transportation-worker exception. Specifically, Pilak contends that he is excepted from the FAA because he regularly participates in "interstate commerce" as an Uber driver, in that he routinely transports people between Illinois and Missouri and makes trips to St. Louis Lambert International Airport and the Amtrak station in downtown St. Louis. Doc. 16-1 at 3–4. However, every circuit court to consider these arguments for rideshare drivers has rejected it. *See Singh v. Uber Techs.*, 67 F.4th 550, 553–62 (3d Cir. 2023); *Wallace v. Grubhub Holdings*, 970 F.3d 798, 799–803 (7th Cir. 2020); *Capriole v. Uber Techs.*, 7 F.4th 854, 861–66 (9th Cir. 2021); *Cunningham v. Lyft*, 17 F.4th 244, 249–53 (1st Cir. 2021).

First, consider Pilak's contention that his transportation of people across state lines qualifies as participation in interstate commerce. Doc. 16-1 at 4. That argument fails because the relevant inquiry is not whether an individual worker regularly, or even predominantly, engages in transportation of goods or people across state lines, but whether the nationwide "class of worker" is engaged in interstate commerce. *Saxon*, 596 U.S. at 456. In reaching this conclusion, the Court

4

starts, as it must, with the text. *Zimmer Radio of Mid-Missouri, Inc. v. FCC*, 145 F.4th 828, 844 (8th Cir. 2025). "And the first thing we see in the text of the residual category is that the operative unit is a 'class of workers.' So we know that in determining whether the exemption applies, the question is not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce." *Wallace*, 970 F.3d at 800 (quotation omitted) (Barrett, J.); *accord. Singh*, 67 F.4th at 556; *Capriole*, 7 F.4th at 862. This interpretation makes good sense, as otherwise the FAA would apply differently to each individual seeking arbitration, requiring a district court to engage in a fact-specific determination of each individual's engagement with the channels of interstate commerce. *C.f. Bissonnette v. LePage Bakeries Park St.*, 601 U.S. 246, 253–55 (2024) (rejecting test for determining whether a class of worker engaged in interstate commerce which required fact-intensive discovery). As such, the relevant inquiry is whether the nationwide class of Uber drivers participates in interstate commerce.

Second, the Court considers what it means to be engaged in interstate commerce. Every circuit court to consider this issue has focused on one question: whether "engagement with interstate commerce [is] central to the work of Uber drivers?" *Singh*, 67 F.4th at 560; *Wallace*, 970 F.3d at 802; *Capriole*, 7 F.4th at 865–66; *Cunningham*, 17 F.4th at 253. In determining that rideshare drivers are not participants in interstate commerce, many circuit courts have relied on the Supreme Court's decision in *United States v. Yellow Cab Co.*, 332 U.S. 218, 228–29 (1947)*, overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752 (1984). There, the Supreme Court held that local taxicabs, which "merely convey[ed] interstate train passengers between their homes and the railroad station in the normal course of their independent local service" were not "an integral part of interstate transportation." *Id.* at 228–33. Similarly, rideshare drivers as a class are not *at their core* engaged in interstate commerce, even if some (like Pilak) may regularly participate in

5

interstate trips because of geographic quirks. *Singh*, 67 F.4th at 560; *Capriole*, 7 F.4th at 864–65; *Cunningham*, 17 F.4th at 252–53. Thus, Pilak has failed to meet his burden of showing that Uber drivers are a class of worker engaged in interstate commerce. Consequently, the only information available here comes from findings made by other courts, which have consistently found that these workers do not, as a nationwide class, participate in interstate commerce. *Singh*, 67 F.4th at 560–61 (noting that 2.5 percent of Uber's trips are interstate); *Capriole*, 7 F.4th at 864 (noting that only 10.1 percent of trips began or ended at an airport). As such, the Court concludes that Pilak does not fall into the transportation-worker exception of the FAA.

## CONCLUSION

Accordingly, the Court **GRANTS** Defendant Uber Technologies's [13] Motion to Compel Arbitration and **DENIES** as moot Plaintiff Aykut Pilak's [20] Motion for Leave to File Memoranda Regarding the Scope of FAA's § 1 Exemption, [23] Motion for Leave to File Sur-Reply, and [30] Motion for Leave to File Supplemental Factual Allegations. Further, the Court **STAYS** this case pending the outcome of the arbitration. *See* Doc. 13 at 1; 9 U.S.C. § 3.

So ordered this 27th day of January 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE